Print Name: **Steven Amir Parsi**
Sid #: **15750622**
**Snake River Correctional Institution**
**777 Stanton Blvd**
**Ontario ,OR 97914**
    **Pro Se Plaintiff**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE STATE OF OREGON

| | |
|---|---|
| **STEVEN AMIR PARSI,** | ) |
| | ) Case No. 2:18-cv-01970-AC |
| Plaintiff(s) | ) |
| | ) **AMENDED** |
| | ) **PRISIONER CIVIL** |
| | ) **RIGHTS COMPLAINT** |
| v. | ) |
| | ) |
| | ) **JURY DEMAND** |
| **RUBEN BENAVIDEZ,** | ) |
| **GARRET LANEY,** | ) |
| **WILL FANGER,** | |
| **CORRIGAN, R.** | |
| Defendant(s) | |

### I.

I Steven Amir Parsi Plaintiff have no other cases, actions, or appeals, nor have I ever filed any in a United States Court.

### II.

I have gone through and completed the institutions grievance process exhausting in house remedies.

1of12

## III. PARTIES

**Steven Amir Parsi**

SID# 15750622

777 Stanton Blvd

Ontario, Or 979914

**Pro SE  Plaintiff.**


Mr. Ruben Benavidez, a Correctional Officer at Oregon State Correctional Institution Salem, Oregon.

**DEFENDANT.**


Mr. Garret Laney, Superintendent at Oregon State Correctional Institution Salem, Oregon.

**DEFENDANT.**


Lt. Will Fanger a Correctional Officer at Oregon State Correctional Institution    Salem, Oregon.

**DEFENDANT.**


Corrigan, R  a Grievance Coordinator with the ODOC.

**DEFENDANT.**

## IV. STATEMENT OF CLAIMS.

### CLAIM 1

My 8th Amendment right to be free from cruel and unusual punishment was violated by Correctional Officer Benavidez on 8/6/18 at Oregon state Correctional Institution when he acted with a wanton amount of force against me the plaintiff. C/O Benavidez grabbed me from behind while I was facing a wall, lifted me off my feet, and drove me face first into the ground. C/O Benavidez's physical assault continued as he used what I assume was his forearm to grind my face agonizingly against the concrete floor. This part of the assault took place while I was laying prone, saying and doing nothing, with C/o Benavidez on my back. These unprovoked actions by C/O Benavidez are not standard operating procedure. In fact they were so violent that they resulted in me braking a dental implant, while sustaining permanent injury to my jawbone and it's integrity to hold said implant. These actions of Benavidez against me were so violent that the injuries listed within this complaint were received while I was wearing a sports mouth guard, which also broke as a result of officer Benavidez's brutal handiwork. I also obtained swelling and bruises to my head and face in the hours ensuing. This incident happened after I was in compliance to C/O Benavidez's direct verbal order to "stop fighting and face the wall" away from inmate Marco Villarreal SID# 14431659. This was a one sided, approximately five to ten second fight, where inmate Villarreal did not get a chance to hit me back. The injuries that I obtained from C/O Benavidez's ruinous violence has caused me on going pain in my mouth. I'm also experiencing anxiety and worry over irreparable damage to my front tooth (i.e. implant) and gum line. The cost to attempt to fix these issues is stressful and burdensome due to the fact that the dentist here at the prison can not fix dental implants and the financial

responsibility lies upon me and my family.

### SUPPORTING FACTS:

On Aug 6/2018 I was released from OSCI's DSU cell 21, bottom bunk, where I resided with inmate Dakota Miars, top bunk. Upon release I went to OSCI's clothing room to be outfitted for general population. While there I attacked inmate Marco Villarreal SID # 14431659, AKA Nino. Inmate Villarreal fell to the ground and appeared to be dazed so I backed off him. At this point I heard C/O Benavidez give me a direct verbal order to stop fighting and face the wall. I complied, moved further away from inmate Villarreal, and faced the wall. I then waited expecting to be handcuffed behind my back.

C/O Benavidez's stopped to check on inmate Villarreal for a couple seconds. I heard C/O Benavidez say something to the affect of "Nino are you OK?". During this time I was still facing the wall.

C/O Benavidez then approached me, grabbed me from behind, lifted me off my feet, and dumped me face first on the ground. This caused me to slam my face on the concrete floor. Once on the ground C/O Benavidez said "you're not going to fu--ing assault my inmates" and then proceeded to smash the back of my head with his forearm so that my face was roughly grinding against the concrete floor. I offered no resistance and stayed silent so I didn't provoke C/O Benavidez.

This slamming and grinding my face on the concrete ground caused me a lot of pain. I

felt and heard cracking coming from my mouth as this assault continued. I became very worried that my front teeth were braking.

At this time I heard C/O Benavidez tell inmate Villarreal "don't worry, you didn't do anything. Stand against the wall Nino". C/O Benavidez then put handcuffs on my wrist as I lied underneath him.

I was then escorted to DSU. On the way to DSU inmate Villarreal said something to the effect of "you F—ked up, wait till I see you" to which I replied "let that be your notice". This comment by me was made because I was under the impression that inmate Villarreal was the leader of a fraction of my gang who was allegedly targeting me, and I wanted to show him that I was not scared of them. Upon arriving in DSU a nurse came to give me a check up. She asked me if I had any medical issues? I said "yeah, I'm pretty sure that my Tooth is broken". I could feel it loose and wobbling around in my mouth along with constant pain. The nurse then asked me to open my mouth and said " let me see". She then said "let me see you move the tooth". I refused afraid that I might cause further damage and have the tooth fall out. Upon my refusal the nurse turned abruptly and said to the DSU intake officer "he has no medical issues".

I was then Photographed and escorted back to my previous DSU cell that I shared with Dakota Miars. This whole process of seeing medical and being photographed took approximately 10 minutes, not giving enough time for the lumps and bruises to fully set in and form to be accurately documented by photo(s).

During the walk to the DSU cell an officer that was behind me said  "you know why he

went hard on you, right? Cause there's no cameras in the clothing room". This was in obvious reference to the incident that just happened.

Locked back in the cell with Dakota Miars, Dakota said "Damn bro your face is starting to swell up". This was in reference to my left side cheek and eyebrow. I told Dakota that C/O Benavidez also broke my tooth, which is a dental implant, while wearing my mouth guard. The tooth was getting more and more loose every time my tongue seem to touch it, and I showed my cellmate this, accidentally, by touching it with my finger. This caused me to worry greatly about all the implications, including, that the implant might be loose from the bone, to what was going to happen to my gum line. The anxiety of how I was going to contact a dentist from the hole was overwhelming.

After being in my DSU cell for over an hour the pain in my jaw was becoming unbearable and very hard to stand. I and my cellmate then yelled for officer assistance in hopes of getting me some real medical attention (i.e. dental assistance). After approximately five minutes of repeated calling, an officer came down the tier to see what we wanted. I told him that I was in serious pain and needed to see to see a dentist. He promised me that he would see what he could do . He never returned. After another hour or so of waiting, my cellmate took it upon himself to call for medical attention for me. Eventually a different officer responded, and told me that he would call the nurse. Approximately three hours later a nurse came to give my cellmate his scheduled medication an I took the opportunity to tell her about my issue. The nurse told me to fill out an inmate communication form (AKA kyte) to dental, but also said that she would send the OSCI dentist a referral for me.

Approximately one day passed and I asked Dakota Miars to write me an affidavit documenting my injuries. Dakota then wrote said affidavit an I sent it to my mom who lives in Arizona for safe keeping.

On August 8/ 2018 I saw the Institution dentist at OSCI. The dentist told me after taking a X-ray that there was some dark spots around the implant, but he assumed that the post was what was broken. He told me that I would need to seek outside care to fix my tooth and that he would start the necessary process on the institutions end. Before I left I told him about my pain and also worry about my gum line. He responded by saying that the pain was normal considering that I had been slammed on my face and that it was a common thing to loose gum line after an injury, but he could not fix it. That would take a specialist.

Some days Later C/O Benavidez was Working in DSU. During lunch time meal tray pick up he stopped at my cell and said to my cellmate Dakota Miars, who was handing him out our trays, "don't you know the average person has thirty two teeth in their head". C/O Benavidez then snickered and walked off. My cellmate knew that this was the officer who had broke my tooth and that C/O Benavidez was trying to further torment me about the incident. Dakota Miars then wrote me another affidavit on C/O Benavidez's comment. I took said affidavit and sent it to my mom in Arizona for safe keeping.

On August 22/ 2018 I was transferred to Snake River Correctional Institution DSU.

On August 27/ 2018 I saw the dentist at SRCI. The SRCI dentist told me that my implant tooth and surrounding bone had taken more damage than eluded to by the dentist at at

implant tooth and surrounding bone had taken more damage than eluded to by the dentist at at OSCI. I told the the SRCI dentist that the OSCI dentist had said that it was probably the post that was broken. The SRCI dentist replied by saying " I'm not going to to lie to you and tell you what you want to hear, I'm going to tell you the truth". He then went on to explain to me that I had sustained damage to the surrounding bone, causing the implanted screw that is embedded in my bone to come loose. He also said that in his opinion this damage was irreparable because of the lack of bone to anchor to. He started the process so my family could purchase outside care for me at that time.

On approximately September 5/ 2018 the tooth fell out exposing the broken dental hardware under the crown.

### CLAIM II

Upon information and belief my 8th Amendment and 14th Amendment(s) were violated by Mr. Garret Laney, Superintendent at Oregon state Correctional institution (OSCI).

### SUPPORTING FACTS:

1.  While recounting the incident described in claim one with my cellmate Dakota Miars, while in DSU at OSCI, Dakota Miars alerted me to another assault that C/O Benavidez had allegedly perpetrated. This assault allegedly involved another officer John Doe AKA C/O Cornell. It is my belief at this time that C/O Benavidez was administratively investigated for this assault. It is my assertion that Superintendent Garret Laney knew about C/O Benavidez's propensity for inappropriate an assaultive behavior, but still chose to employ C/O Benavidez

and therefore, gave rise and opportunity to a cruel environment for me, where I was unusually punished. This egregious negligence caused me bodily harm in the braking of my front tooth (i.e. A dental implant).

2. Garret Laney as acting Superintendent of OSCI failed to ensure that his officer(s) were punished for the assault against me, therefore being complicit to the assault after the fact.

3. Garret Laney as acting Superintendent of OSCI failed to ensure that his employee(s) understood what a Use of Force entails as per ODOC policy, and his officers were therefore acting in a manner that was detrimental to me.

4. Garret Laney as acting Superintendent failed to ensure that his officer were accurately recording, reporting, and filing the proper reports when a Use of force was applied on me as per ODOC policy, and therefore took away any opportunity for an ODOC review process to understand the incident in its entirety, and pay for my medical cost.

### CLAIM III

Lt. Will Fanger did willfully and knowingly violate my 8th Amendment and 14th Amendment Right(s). By Lt. Fanger failing to conduct an Unusual Incident Report (UIR), which if conducted unbiased, according to ODOC policy, procedure, and rules, would of shown that officer Benavidez was responsible for the injuries that I sustained. This is important element because by Lt. Fangers failure to preform his duties I was forced to seek and pay for outside medical care after the incident in attempt to heal my injuries. The financial burden that this placed on me was significant and furthered my unusual punishment and suffering. If the UIR would of been reported correctly, ODOC would of known of the incident in it's entirety, and therefore been responsible for my outside medical cost. By obscuring the reporting process

and failing to write and file the proper reports as his job responsibilities dictate Lt. Fanger took away my guarantee to due process (14th Amendment violation) within the institution after the incident, and in that act became complicit in Benavidez' assault upon me, thus furthering the cruel and unusual punishment I endured .

*Please note that I bracketed the 14th Amendment in this claim because of the multiple violations that separate it from the body of the underlying 8th Amendment violations that occurred blatantly, otherwise 8th Amendment is bracketed also.*

### SUPPORTING FACTS:

Lt. Will Fanger being the Officer In Charge (OIC), and directly overseeing officer Benavidez failed to write or ensure the filing the Unusual Incident Report (UIR) as per his duty. This report records anytime an officer acts with a Use of Force against an inmate as stated in ODOC policy. By failing to write or file the UIR Lt. Fanger was ensuring that this incident was not going to be reviewed by the proper authoritative channels that oversee when an officer acts with force, therefore, covering the incident up (14th Amendment violation). (It should be noted that post filing of Plaintiff's Civil Complaint an investigation was launched as to the incident in contention, and found to the disbelief of the investigator that no UIR was written until post filing of the Plaintiff's Civil Complaint; by that time making it a mute report.) Lt. Fanger took away any chance at an independent review of the incident by failing to honestly report that a Use of Force happened, in attempt to white wash Benavidez' actions and story when physical evidence and Benavidez own Statements would show that a Use of Force was applied upon me. These actions/in-actions I believe, as the facts support make Lt. Fanger as an independently liable to the assault and after effects that I suffered (8th Amendment violation).

*Please note that I bracketed the 14th Amendment in this claim because of the multiple*

*violations that separate it from the body of the underlying 8th Amendment violations that occurred blatantly, otherwise 8th Amendment is bracketed also.*

### CLAIM IV

Grievance Coordinator Coorrigan, R violated my 8th Amendment and 14th Amendment Right(s).

### SUPPORTING FACTS

Upon filing a legitimate Grievance on 8/26/18 detailing the assault perpetuated against me by C/O Benavidez the institution was given another chance to review the incident and provide me with adequate medical treatment; Grievance Coordinator Coorrigan unjustifiably denied me this review and potential remedy for the reason(s) of that the incident in dispute was part of a misconduct report. This indefensible refusal to review my grievance as legitimate (14th Amendment violation) makes Grievance Coordinator Coorigan complicit in legitimizing Ruben Benavidez' assault upon me and had a hand in further my suffering (8th Amendment violation) when I was seeking a resolution.

*Please note that I bracketed the 14th Amendment in this claim because of the multiple violations that separate it from the body of the underlying 8th Amendment violations that occurred blatantly, otherwise 8th Amendment is bracketed also.*

## V. RELIEF.

I respectively request that this court grant me:

- $ 350,000 in compensatory damages.

- $ 200,000 in punitive damages.

- Order the defendants to pay reasonable cost for all court and legal fees incurred on my behalf.

I declare under penalty of perjury that the above information true and correct.

11/15/19
DATE

SIGNATURE OF APPLICANT

STEVEN PARSI

PRINTED NAME OF APPLICANT